IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:06-CV-124-D2

| | |
|---|---|
| PAULETTE LAWSON, | ) |
| Plaintiff/Claimant, | ) ) ) |
| v. | ) **MEMORANDUM AND RECOMMENDATION** ) |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

This matter is before the Court on the parties' cross motions for judgment on the pleadings. Claimant Paulette Lawson seeks judicial review of the Commissioner's denial of her application for Disability Insurance Benefits. After a thorough review of the record and consideration of the briefs submitted by counsel, the Court recommends denying Claimant's Motion for Judgment on the Pleadings [DE-13], and granting Defendant's Motion for Judgment on the Pleadings [DE-15].

## STATEMENT OF THE CASE

On June 29, 2004, Claimant filed an application for Disability Insurance Benefits, Disabled Widow's Benefits, and Supplemental Security Income. Claimant asserted that she became disabled as of June 17, 2004, due to arthritis pain, anxiety, and high blood pressure. (TR. 18). Claimant's application was denied initially and upon reconsideration. (TR. 63-73). Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took place on July 28, 2005. After the hearing, the ALJ issued a decision

1

denying Claimant's request for benefits on February 21, 2006. The Appeals Council denied Claimant's request for review on June 29, 2006, rendering the ALJ's decision a "final decision" for purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW AND SOCIAL SECURITY FRAMEWORK

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also 42 U.S.C. § 405(g) (2006). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

This court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the Commissioner's decision, the court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two, the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit(s) him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairments; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert (VE), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges in her brief that the ALJ erred by concluding that Claimant retained the RFC to perform a reduced range of light work and could return to her previous work as a cleaner. Nonetheless, it is the opinion of this Court that the ALJ did not err.

## **STATEMENT OF THE FACTS**

### I. The ALJ's Findings

In making the decision in this case, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920, and found that Claimant had not engaged in substantial gainful activity at any time relevant to the ALJ's decision. (TR. 19). Then, the ALJ proceeded to step two to determine whether Claimant had a "severe" impairment or combination of impairments which significantly limited her from performing basic work activities. See 20 C.F.R. §§ 404.1520(b) and 416.920(b). The ALJ found that Claimant suffered from the following severe impairments: "osteoarthritis of the knees, chronic lower back pain, anxiety and depression." (TR. 23). However, at step three the ALJ determined that Claimant's impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (TR. 23). Next, the ALJ determined Claimant's RFC by considering all of her symptoms, including pain, and all medical opinions and concluded that she retained the RFC to perform a reduced range of light work. (TR. 24). At step four, the ALJ found that Claimant could return to her past relevant work as a cleaner. (TR. 27). As a result, the ALJ found that Claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of his decision. (TR. 27).

### II. Claimant's Testimony at the Administrative Hearing

Claimant testified at her administrative hearing. (TR. 230-49). She was 59 years old at the time of the hearing and testified that she received her GED certificate and so completed high school. (TR. 38). She said that she lives with her son and daughter-in-law,

4

as well as two grandchildren, aged four and eight. (TR. 38, 45). She testified that the last job she held was a cashier at Family Dollar, and that before that she worked as a grocery stocker at Wal-Mart, but had to quit both jobs because of pain in her legs, knees and back. (TR. 39-40). In addition, Claimant testified that her previous work experience included assembly type jobs and clerical work in an office. (TR. 41-42). She stated that she has not worked since the onset of her alleged disability on June 17, 2004. (TR. 232).

Claimant testified that she suffers from arthritis in her back, neck and shoulder, which causes spasms and that she cannot sit for more than half an hour because of these ailments. (TR. 42). She stated that she has very stiff joints and suffers from numbness in her hands and feet. (TR. 43). Claimant stated that she tries to walk to alleviate some of the pain, and is able to go about half a mile every other day. (TR. 44). She testified that walking does help with the pain. (TR. 44). Claimant said that she can stand for about one hour, but then her feet, legs, knees, back and neck begin to hurt, and she has to lay down. (TR. 48). She has to lie down for between one to two hours everyday. (TR. 49). She said that she thought she could lift 20 pounds, but needed two hands to pull a gallon of milk from the refrigerator. (TR. 49). She also testified that when she looks down for any length of time, her neck gets very stiff. (TR. 50).

Claimant stated that she performs various activities of daily living. For example, she watches her grandchildren three mornings a week for approximately four hours at a time. (TR. 45). She fixes them breakfast, and then watches them while they play outside. (TR. 45). She testified that she walks and plays video games for about 30 or 45 minutes a day. (TR. 46). She also stated that she sweeps the kitchen floor for a few minutes after meals and runs the vacuum approximately once a week for 15 minutes in the living room. (TR.

5

46). She also stated that she washes and folds laundry about every other day. (TR. 46). Claimant testified that she makes dinner approximately twice a week for the family. (TR. 47). She and her grandson clean up after meals. (TR. 47). She stated that she goes to Wal-Mart once a week and out to eat maybe once a month. (TR. 47).

Claimant also testified that she suffers from mental impairments such as anxiety and depression. (TR. 50-51). She stated that sometimes she wakes up at night and feels like everything is closing in on her. (TR. 51). She testified that it takes her three to five hours to calm down from these anxiety attacks, but that her prescribed medication helps. (TR. 51-52).

Claimant testified that she takes ibuprofen for arthritic pain. (TR. 44). She was also prescribed Mobic, but had not yet taken that medication at the time of the hearing. In addition, Claimant was prescribed Celebrex, Vioxx, and Paxil for pain and other symptoms. (TR. 45). Claimant also stated that she took Lorazepam for anxiety and depression. (TR. 50).

### III. The Vocational Expert's Testimony at the Administrative Hearing

Dixon Pearsall testified as a VE at the administrative hearing. (TR. 56-61). The VE began by classifying Claimant's past work experience. (TR. 57). He noted that Claimant has had a number of different types of jobs: (1) general hand assembler, requiring a light exertion level and a specific vocational preparation (SVP) level of 2; (2) cashier, requiring a light exertion level and an SVP of 2; (3) hand packer or packager, requiring a medium exertion level and an SVP of 2; (4) sewing machine operator, requiring a light exertion level and an SVP of 3; and (5) cleaner, requiring a light exertion level and an SVP of 2. The ALJ then posed the following hypothetical:

6

> Please assume that you're dealing with a hypothetical individual the same age as the Claimant with the same educational background and past work experience. Further assume that this hypothetical individual retains the capacity of lifting 50 pounds on an occasional basis, 25 pounds on a frequent basis. Can stand six of eight hours, walk six of eight hours, and sit six of eight hours. This individual would have the following non-exertional limitations. Pushing and pulling in the lower extremity would be frequent. Ropes, ladders, and scaffolds would be never. Climbing occasional. Balancing, stooping, . . . crouching, and crawling would be frequent. . . . Kneeling would be occasional. . . . This individual would be able to do simple one, two-step tasks. And this person would have to have a low production work environment. . . .

(TR. 57-58). The ALJ then asked the VE to identify any occupations that exist in the economy in significant numbers that the hypothetical claimant could perform. The VE responded that such an individual could work as an office or light cleaner and hand packer. (TR. 58). The VE asked a second hypothetical that limited the lifting and carrying requirements to 20 pounds occasionally and 10 pounds frequently. (TR. 58). The VE stated that with the added limitation, the hypothetical person could still work as an office or light cleaner. (TR. 58).

## DISCUSSION

### I.  The ALJ Did Not Err by Finding that Claimant Retained the RFC to Perform Her Past Relevant Work as a Cleaner

Claimant argues that the ALJ erred in assessing her RFC by concluding that she could still perform her past relevant work as an office cleaner. Claimant alleges that the ALJ failed to fully review the physical and mental demands of Claimant's past work as an office cleaner sufficient to comply with Social Security Ruling 96-8p.

Ruling 96-8p provides that an ALJ should perform a function-by-function assessment of a claimant's physical and mental capacities in determining whether the

7

claimant can perform her past relevant work activity. Claimant, here, argues that the ALJ failed to engage in such an analysis. However, it is the court's opinion that the ALJ did not err and performed a function-by-function analysis.

The ALJ considered Claimant's physical abilities. (TR. 24). For example, he found that she could lift and carry 20 pounds occasionally and 10 pounds frequently; she could stand, walk and sit for 6 hours in an 8 hour day; she could push and pull with her lower extremities frequently; she could climb stairs and ramps and kneel occasionally; and she could balance, stoop, crouch and crawl frequently. He also limited Claimant to no climbing of ladders, scaffolds and ropes. (TR. 24-25). In addition, the ALJ considered Claimant's mental capacities. (TR. 25). He noted that because of her anxiety and depression, Claimant was limited to performing jobs with simple one-two step tasks in a non-production work environment. (Tr. 25). Only after that assessment did the ALJ conclude that Claimant could perform her past work as a cleaner, which is classified by the DOT as a light unskilled job. (TR. 27).

In determining her RFC, the ALJ considered:

> all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529 and 416.929, and Social Security Ruling 96-7p. The undersigned must also consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations.

(TR. 24). In eight, single spaced pages, the ALJ considered Claimant's medical records, her subjective complaints, and her testimony at the hearing. (R. 19-26). After reviewing all of the evidence, the ALJ found that Claimant's RFC allowed her to perform her past

relevant work as a cleaner.

Claimant bears the burden, at step four, of establishing that she does not retain the RFC to perform her past relevant work. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (noting that the claimant bears the burden of proof with regard to the first four steps of the analysis necessary to determine disability, including whether the claimant can perform her past relevant work). It is the court's opinion that she has failed to satisfy that burden and the ALJ properly assessed her RFC.

Claimant also argues that the ALJ failed to assess the specific demands of Claimant's past work as a cleaner. However, the ALJ did note that the job of cleaner is a light unskilled job. The ALJ did not discuss the specific demands of Claimant's particular prior job as a cleaner. However, at step four, an ALJ may find that a claimant can perform her past relevant work "either as [s]he performed it in the past or as it is generally required by employers in the national economy." Pass v. Chater, 65 F.3d 1200, 1207 (4th Cir. 1995). The cleaner job is classified as light and unskilled. The ALJ considered Claimant's physical and mental limitations and concluded that she is capable of performing light unskilled work. Accordingly, the fact that the ALJ did not explicitly discuss the requirements for Claimant's particular cleaning position was not reversible error.

## II. The ALJ Did Not Err By Concluding that Claimant Could Perform Specific Work-Related Activities

Next, Claimant argues that the ALJ erred by concluding that she could perform various work-related activities. Specifically, Claimant contends that she is not capable, contrary to the ALJ's findings, of walking, sitting and standing for 6 hours out of an 8 hour day, is not able to frequently balance, stoop, crouch, and crawl and cannot even

9

occasionally kneel. Claimant largely bases her argument on the medical opinion of Dr. Alicja E. Rafalowski. (TR. 143-46). Dr. Rafalowski opined that Claimant could sit only for 30 minutes before needing to change positions, move and walk for only 30 minutes before needing to rest, and could lift, carry and handle objects no heavier than 20 pounds.

When evaluating and weighing medical opinions, an ALJ should consider the following non-exclusive list "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005).

In this case, Dr. Rafalowski did examine Claimant. However, Dr. Rafalowski was a one-time examining physician. (TR. 26). Accordingly, the ALJ permissibly refrained from giving Dr. Ragalowki's opinion controlling weight. See Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (noting that an ALJ should accord greater weight to a treating physician's opinion because the treating physician has developed a treatment relationship with the claimant). In addition, because Dr. Rafalowski saw Claimant only once, no treatment relationship between the two developed.

Moreover, Dr. Rafalowski's opinion regarding Claimant's ability to sit, stand, and move for only 30 minutes at a time is not supportable because it is inconsistent with much of the other evidence in the record. The ALJ noted that one reason for giving that part of Dr. Rafalowski's opinion minimal weight is because Claimant, herself, testified at the hearing that she could stand for one hour and sit at the computer for 45 minutes. Accordingly, Claimant's own testimony at the hearing establishes that her ability to sit, stand and walk is not as limited as Dr. Rafalowski opined. In addition, Claimant testified

that she could participate, to some extent, in various activities of daily living, including sweeping, cooking, doing the dishes, vacuuming, taking out the trash, washing laundry, folding clothes, dusting, shopping, and caring for her grandchildren. The ALJ further noted that these activities are inconsistent with the limitations that Dr. Rafalowski noted. (TR. 26). Also, two reviewing doctors for the Disability Determination Service found Claimant to be much less restricted that Dr. Ragalowski. In October 2004, and again in January 2005, two separate doctors concluded that Claimant could stand, walk and sit six hours in an eight hour day. (TR. 153, 180).

Finally, Dr. Rafalowski is an internal medicine doctor who examined Claimant on behalf of the North Carolina Department of Health and Human Services. Accordingly, Dr. Ragalowski is not a specialist that Claimant was seeing for a particular medical complaint. For the following reasons, the ALJ correctly afforded minimal weight to the part of Dr. Ragalowski's opinion that limited Claimant to 30 minute increments for sitting, standing and walking. Whether this court would assess the evidence differently is immaterial. As long as substantial evidence in the record supports that ALJ's conclusion, as it does here, the ALJ has not erred. See Craig v. Chater, 76 F.3d , 585, 589 (4th Cir. 1996) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on . . . the ALJ.").

### III. The ALJ Did Not Err in Assessing Claimant's Credibility

Claimant also argues that the ALJ erred in assessing her credibility. Although the ALJ did not make an explicit credibility determination, he noted that Claimant's testimony regarding alleged chronic pain and her alleged symptoms were inconsistent with the medical evidence of record.

The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p. When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. See Ivey v. Barnhart, 393 F.Supp.2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

However, here, the ALJ did provide specific reasons for her adverse credibility findings. The ALJ based his conclusion on the fact that (1) Claimant was not diagnosed with suffering from chronic pain by her examining or reviewing physicians, (2) she did not require "significant treatment, such as surgery, physical therapy, or a brace, and she has not been hospitalized for her chronic pain" (TR. 22), (3) she did not require significant medication for pain (4) there is no record evidence to corroborate Claimant's alleged anxiety attacks, (5) she has not received any mental health treatment,(6) she alleged that she had trouble concentrating but an examining physician found that she had adequate attention and concentration, and (6) she can perform a significant range of activities of daily living. (TR. 22). Claimant argues that other evidence in the record suggests that she does suffer from chronic pain, such as various measures she uses to alleviate pain, including limiting her activities of daily living. She also argues that the ALJ should not have relied on the physician's reports because they discuss acute pain, but not chronic pain.

The fact that Claimant can point to other evidence in the record that supports her claimed impairments does not diminish the ALJ's analysis. When conflicting evidence is

12

presented, it is up to the ALJ to resolve those inconsistencies. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). It is not the province of this court to determine the weight of the evidence. Id. Moreover, the ALJ did not err in considering the physicians reports, which did not suggest that Claimant is suffering from chronic pain. Because the ALJ pointed to evidence in the record to support his conclusion that Claimant was not totally credible, he satisfied his duty under the applicable regulations and law.

## CONCLUSION

Accordingly, because there is substantial evidence to support the findings of the ALJ, the court **RECOMMENDS** that the claimant's motion for judgment on the pleadings be **DENIED**, the defendant's motion for judgment on the pleadings be **GRANTED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This 8th day of August, 2007.

DAVID W. DANIEL
United States Magistrate Judge