IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:06-CV-124-D

| | | |
|---|---|---|
| PAULETTE LAWSON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

Paulette Lawson ("plaintiff" or "claimant") appeals the Commissioner of Social Security's ("Commissioner") final decision denying her application for disability insurance benefits and supplemental security income payments (collectively, "benefits"). Magistrate Judge Daniel issued a Memorandum and Recommendation ("M&R") recommending that claimant's motion for judgment on the pleadings be denied, the Commissioner's motion for judgment on the pleadings be granted, and the final decision of the Commissioner be affirmed. Claimant objected to the M&R, and the Commissioner responded. As explained below, the court overrules the objections to the M&R, adopts the M&R, and affirms the Commissioner's final decision.

I.

"The Federal Magistrates Act requires a district court to 'make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C.A. § 636(b)(1) (West 1993 & Supp. 2005)) (alteration in original &

---

[1] Michael J. Astrue replaced Jo Anne B. Barnhart as Commissioner of Social Security. Accordingly, Michael J. Astrue is substituted as the official-capacity defendant. See Fed. R. Civ. P. 25(d) (2007).

emphasis removed). Absent a timely objection, "a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Id. (quotation omitted).

The court has reviewed the record, the briefs, the M&R, the objections, and the response. As for those portions of the M&R to which plaintiff does not object, there is no clear error on the face of the record. Thus, the court adopts those portions of the M&R. As for the objections, the court reviews them de novo.

In reviewing the objections to the M&R, the court applies the same legal standard that Judge Daniel discussed in the M&R. See M&R 2–3. Specifically, the court "must uphold the factual findings of the [administrative law judge] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see 42 U.S.C.A. § 405(g) (West Supp. 2007). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Under the substantial evidence standard, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig, 76 F.3d at 589.

II.

On July 28, 2005, an administrative law judge ("ALJ") held a hearing regarding claimant's application for benefits. See R. at 33–62. The ALJ uses a five-step process in evaluating disability claims. See 20 C.F.R. §§ 404.1520, 416.920 (2007). Essentially, this process requires the ALJ to consider whether a claimant (1) is engaged in substantial gainful employment; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) possesses the residual functional capacity ("RFC") to return to her past relevant work; and (5) if not,

2

whether she can perform other work in light of her age, education, work experience, and RFC. See M&R 3; R. at 18. The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See, e.g., Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The ALJ denied claimant's application for benefits. R. at 17–29. At step one in the five-step process, the ALJ found that claimant had not engaged in substantial gainful activity at any time relevant to the ALJ's decision. Id. at 19. Next, the ALJ determined that claimant had the severe impairments of osteoarthritis of the knees, chronic low back pain, anxiety, and depression. Id. at 23. At step three, the ALJ found that claimant did not have an impairment, or combination of impairments, that met or medically equaled the criteria of a listed impairment under 20 C.F.R. § 404, Subpart P, App. 1. Id. At step four, the ALJ evaluated claimant's testimony and the medical evidence and determined that claimant possessed the RFC to perform a "reduced range of light work activity." Id. at 24–27. Based on claimant's particular RFC, and the testimony of a vocational expert, the ALJ found that claimant could return to her past relevant work as an office cleaner as generally performed in the national economy. Id. at 25. Accordingly, the ALJ concluded that claimant was not disabled, and did not reach step five. See id. at 26.

On June 29, 2006, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. See id. at 6–8. On September 5, 2006, claimant filed this action, and the parties thereafter filed cross-motions for judgment on the pleadings. On August 8, 2007, Judge Daniel issued an M&R rejecting claimant's arguments. Lawson thereafter made several objections to Judge Daniel's M&R, and the Commissioner responded.

3

Case 7:06-cv-00124-D   Document 23   Filed 01/08/08   Page 3 of 10

III.

Lawson first objects that the ALJ failed to consider the specific demands of her previous job as it is generally performed in the national economy. Pl.'s Objs. 1. Lawson acknowledges that, had the ALJ found that she could perform the full range of light work, there would be no need to consider the specific demands of any particular "light" job. Id. However, because the ALJ found that Lawson was only capable of "a reduced range of light work activity," R. at 24, Lawson contends that the ALJ erred by not expressly addressing the interplay of this "reduced range" with her ability to work as an office cleaner. Pl.'s Objs. 2–3.

Although many jobs have common traits, "they often involve quite different functional demands and duties." Soc. Sec. Rul. 82-61, 1982 WL 31387, at *1 (Nov. 30, 1981). The ALJ must therefore determine whether a claimant's particular RFC will allow her to perform either "[t]he actual functional demands and job duties of a particular past relevant job, or . . . [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." Id. at *2 (emphasis removed); accord 20 C.F.R. § 404.1520(a)(4)(iv), (f) (2007); 20 C.F.R. § 416.920(a)(4)(iv), (f) (2007). Here, contrary to Lawson's arguments, the ALJ properly applied the standard by evaluating how Lawson's RFC impacted her ability to perform the job of office cleaner as it is generally performed in the national economy. See Pass v. Chater, 65 F.3d 1200, 1207 (4th Cir. 1995).

In his written decision, the ALJ gave a detailed description of Lawson's RFC. The ALJ found that Lawson could perform a "reduced range of light work activity," including carrying 10 pounds frequently and 20 pounds occasionally. R. at 24. The ALJ found that Lawson could stand, walk, or sit for six out of eight hours, could frequently push or pull with her legs, could occasionally

kneel and climb stairs or ramps, and could frequently balance, stoop, crouch, and crawl. Id. at 24–25. He also found that Lawson could not climb ladders, ropes, or scaffolds, and that she should be limited to simple tasks in a non-production line work environment. Id. The ALJ then presented this RFC to the vocational expert ("VE"), Dr. Dixon Pearsall, through a detailed series of hypothetical questions. Id. at 56–60. For example, the ALJ asked the VE to

> [A]ssume that you're dealing with a hypothetical individual the same age as the Claimant with the same educational background and past work experience. Further assume that this hypothetical individual retains the capability of lifting [20] pounds on an occasional basis, [10] pounds on a frequent basis. Can stand six of eight hours, walk six of eight hours, and sit six of eight hours. This individual would have the following non-exertional limitations. Pushing and pulling in the lower extremity would be frequent. Ropes, ladders, and scaffolds would be never. Climbing occasional. Balancing, stooping, kneeling, crouching, and crawling would be frequent. . . . Kneeling occasional. This individual would be able to do simple one, two-step tasks. And this individual would have to have a low production work environment . . . . Could such an individual perform any of the Claimant's past relevant work as actually performed by the Claimant or as generally performed in the national economy?

Id. at 57–58. In response, the VE noted that such an individual could serve as an office cleaner. Id. at 58.

An ALJ may rely on VE testimony in determining whether a claimant's specific RFC will permit her to return to her past relevant work. See 20 C.F.R. § 404.1560(b)(2) (2007) ("[A] vocational expert . . . may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed . . . can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy."); 20 C.F.R. § 416.960(b)(2) (2007) (same). Contrary to claimant's argument, the ALJ expressly considered, through his hypothetical questions, whether Lawson could meet the demands of being an office cleaner given her specific impairments. See R. at 57–58. The

5

ALJ committed no legal error, his decision is supported by substantial evidence, and Lawson's first objection is overruled. See Craig, 76 F.3d at 589.

IV.

Lawson next objects that substantial evidence does not support the ALJ's conclusion regarding the extent of her limitations. See Pl.'s Objs. 3–7. Essentially, claimant argues that "the ALJ reached his decision through misstatement and exaggeration of the extent of Ms. Lawson's daily activities and through an inexplicable preference for the opinions of physicians who had no direct contact with Ms. Lawson and who were less professionally qualified . . . [than] Dr. Rafalowski, a board certified internist who had examined Ms. Lawson." Id. at 6. The court interprets this objection to be a two-part challenge: first, to the evidentiary basis of the ALJ's conclusion, and second, to the ALJ's assessment of Dr. Rafalowski's opinion.

A.

Lawson objects to the ALJ's conclusion that Lawson was not as disabled as Dr. Rafalowski described her to be. See Pl.'s Objs. 6. Accordingly, the court must determine whether substantial evidence supports the ALJ's decision. See Craig, 76 F.3d at 589.

"Dr. Rafalowski opined that Claimant could sit only for 30 minutes before needing to change positions, move and walk for only 30 minutes before needing to rest, and could lift, carry and handle objects no heavier than 20 pounds." M&R 10; accord R. at 146. However, the ALJ found this evaluation inconsistent with much of the evidence in this case, including claimant's own testimony. See R. at 25–26. Lawson testified that she is able to participate in many of the activities of daily life, including sweeping and vacuuming the kitchen, some cooking, doing laundry, and shopping for groceries. See id. at 45–48. Lawson also testified that she could stand for approximately one hour.

6

See id. at 48. Moreover, two other physicians opined that claimant was significantly less restricted than Dr. Rafalowski opined. See id. at 153, 180 (concluding that Lawson can stand for six hours out of an eight hour workday).

Although there is contrary evidence in the record, this court does not resolve evidentiary conflicts. See Craig, 76 F.3d at 589 ("Where conflicting evidence allows reasonable minds to differ . . . , the responsibility for that decision falls on the [ALJ] . . . ."); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). Substantial evidence supports the ALJ's determination that Lawson was not as restricted as Dr. Rafalowski opined, and claimant's objection is overruled. See Craig, 76 F.3d at 589; Gordon, 725 F.2d at 235.

B.

Lawson next objects to the ALJ's determination that a portion of Dr. Rafalowski's opinion was entitled to little weight. See Pl.'s Objs. 6 (discussing R. at 25–26). In considering the credibility of a medical opinion, courts may look to various non-exclusive factors, including "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (per curiam). The court must determine whether substantial evidence supports the ALJ's decision to discount a portion of Dr. Rafalowski's opinion using these non-exclusive factors. See id. at 655 n.8.

Here, Dr. Rafalowski examined claimant, but had no treatment relationship with her. See R. at 26 ("Dr. Rafalowski was an examining physician and only examined the claimant on one occasion."). Moreover, Dr. Rafalowski is not a specialist concerning any of claimant's impairments.

7

Compare Pl.'s Obj. 6 (indicating that Dr. Rafalowski is an internist) with R. at 23 (indicating claimant's impairments as osteoarthritis of the knees, chronic low back pain, anxiety, and depression). Most importantly, the ALJ noted that Dr. Rafalowski's opinion was not supportable because it was inconsistent with much of the other evidence, especially claimant's participation in numerous daily-life activities. See R. at 26 ("Performance of such activities is inconsistent with the medical opinion as found by Dr. Rafalowski."). Substantial evidence supports the ALJ's decision to discount a portion of Dr. Rafalowski's opinion, and claimant's objection is overruled. See Craig, 76 F.3d at 589.

V.

Finally, Lawson objects to the ALJ's determination that her subjective complaints of pain were not fully credible. See Pl.'s Objs. 7–10. She contends that the ALJ has "misstate[d] the evidence" and "ignore[d] or unjustifiably discount[ed] certain pieces of evidence that do not support his conclusion." Id. at 10.

When an ALJ makes a credibility determination, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). The court's review is limited to determining whether substantial evidence supports the ALJ's credibility decision. Johnson, 434 F.3d at 658.

Here, as Judge Daniel found, the ALJ did not expressly make a credibility determination. M&R 11; see generally R. at 17–29. However, the ALJ did note that Lawson's alleged symptoms did not fully comport with the medical evidence. See M&R 12; R. at 22. According to the ALJ,

8

> Despite the claimant's complaints of severe pain and functional limitations, the evidence reveals that she has retained a significant range of activities of daily living. Specifically, she was able to sweep, cook, do dishes, vacuum one time a week, take out trash, do laundry, fold clothes, dust, and clean the kitchen and living room. The claimant was also able to drive one time per week, occasionally visit with her neighbor, and shop. Moreover, the record reveals that the claimant helps care for her grandchildren, by watching them when they are not in school and fixing them breakfast. These activities are inconsistent with her complaints of severe limitations.

R. at 22. Moreover, Lawson's pain symptoms "ha[ve] not required any significant treatment" and "ha[ve] not required significant medication,"[2] id., and her anxiety and concentration difficulties are uncorroborated by any medical evidence and belied by some of her daily activities. See, e.g., id. (illustrating ALJ's consideration that "claimant testified to an ability to play games on the computer, which requires concentration"). Assuming that these passages constitute a credibility determination, they contain specific reasons supported by evidence in the case, see Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4, and constitute substantial evidence in support of the ALJ's credibility determination. See Craig, 76 F.3d at 589. Claimant's objection is overruled.

---

[2] Lawson's reliance on Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006), is misplaced. In Hines, the Fourth Circuit held that an ALJ's decision was not supported by substantial evidence because "[t]he ALJ selectively cited evidence concerning tasks which [the claimant] was capable of performing." 453 F.3d at 565. The appeals court found that "the record, when read as a whole," actually showed marked consistency — not inconsistency — between the claimant's subjective complaints of pain and his daily activities. See id. The appeals court's ruling in Hines was therefore based on the fact that the ALJ had ignored and disregarded evidence. See id. at 565–66.

Although Lawson contends that the ALJ ignored her testimony about how she needs to lie down to rest during the day and how she tempers her daily activities on account of her impairments, Pl.'s Objs. 9, the record indicates otherwise. See, e.g., R. at 21 (illustrating ALJ's consideration of claimant's testimony "that she must [lie] down everyday for at least an hour or more"); R. at 20 (illustrating ALJ's consideration of plaintiff's testimony "that after standing for one hour, her feet, legs, knees, back, and neck begin to hurt and she must [lie] down for an hour or so"). Here, unlike Hines, the claimant's daily activities belie the alleged seriousness of her symptoms. See, e.g., R. at 20 (illustrating ALJ's consideration of claimant's testimony that she tries to exercise by walking ½ mile every other day); R. at 21 (illustrating ALJ's consideration of claimant's testimony that she has gone to the beach "10 times in the past 1 ½ years"); R. at 85–91 (function report).

9

VI.

For the reasons stated above, plaintiff's objections to the M&R are OVERRULED, and the court ADOPTS the M&R. Accordingly, plaintiff's motion for judgment on the pleadings is DENIED, the Commissioner's motion for judgment on the pleadings is GRANTED, and the final decision of the Commissioner is AFFIRMED.

SO ORDERED. This 8 day of January 2008.

JAMES C. DEVER III
United States District Judge